Page *v.* Esty.

———————◇———————

GEORGE B. PAGE & *als.*, *versus* HIRAM ESTY.

A lease for a term of years, conditioned for the payment of an annual rent, with a perpetual right of renewal, does not divest the lessor of his fee in the premises.

A conveyance of the leased premises by the lessor makes the grantee the landlord of the lessee, with the right to possession upon a forfeiture for breach of the conditions of the lease.

A surrender of the lease, after such conveyance, to the original lessor, gives him no interest in the premises; and, if the lease is cancelled, the grantee holds the premises discharged of the incumbrance.

A judgment is conclusive upon the parties, and their privies in estate.

When a motion to set aside a verdict is overruled and judgment rendered thereon, a similar motion in a subsequent suit between the same parties or their privies in estate, to set aside a verdict settling the same questions, in the same way, must be overruled.

In an action of trespass *quare clausum*, the jury found that the *locus in quo* was "necessary for and attached to" the defendant's gristmill, — the use of the *locus*, as a passage-way by plaintiff, being inconsistent, with the ordinary use of the gristmill; a motion to set aside the verdict as against evidence was overruled and judgment rendered; in a subsequent suit between the defendant's grantees and the plaintiffs, the jury, upon the same evidence, and upon the same instructions, found that another parcel of the same premises, which the respective parties claimed under the same title, was "necessary for and attached to" the gristmill, —

Page *v.* Esty.

*Held,* that a motion to set aside the verdict in the latter case as being against evidence, must be overruled, it appearing that the use by the other party of the premises in dispute in the second case, was a greater incumbrance on the use of the gristmill than his use of the premises in dispute in the first case.

A conveyance of " a gristmill in Houlton, on the Meduxnekeag stream, now owned and occupied by us, with all the appurtenances and machinery thereunto belonging, *together* with the land and privileges where the same is situated, necessary for, and attached to said gristmill; hereby meaning and intending to convey all of the lands and mill privileges, (not heretofore sold by us,) on the dam connected with said grist mill and privilege," conveys so much of the " land and privileges where the mill is situated" as the jury shall find is " necessary for and attached to said gristmill;" also, all the lands and mill privilege," *situate on the same dam*, not before sold by the grantors, whether "necessary for and attached to said gristmill" or not.

On Exceptions, by the defendant, to the ruling of Cutting, J., and on motion to set aside the verdict as against evidence.

Real Action.

The facts are sufficiently stated in the opinion.

The following is a diagram, taken from Burleigh's plan of the premises.

*J. Granger*, for tenant.

*B. Bradbury* and *J. C. Madagan*, for demandants.

The opinion of the majority of the Court was drawn by

CUTTING, J. — The demandants claim title to the disputed premises through mesne conveyance from one Bachelor Hussey, whose deed from Jay S. Putnam and Aaron R. Putnam, dated May 13, 1843, conveyed to him in mortgage, — "the gristmill in said Houlton, on the Meduxnekeag stream, now owned and occupied by us, with all the appurtenances and machinery thereto belonging, together with the land and privilege where the same is situated, necessary for and attached to said gristmill; hereby meaning and intending to convey all the lands and mill privilege (not heretofore sold by us) on the dam connected with said gristmill and privilege." The demandants contend that the foregoing language is sufficiently explicit and comprehensive to embrace the demanded premises. Whereas the tenant, denying the correctness of such a construction, claims title derived from the same original grantors by a lease from them to one Samuel Houlton, dated March 15, 1841, duly recorded; letting the demanded premises, which are situated easterly and nearly adjoining the gristmill building, for the term of twenty years, with an agreement " to renew and continue to renew said lease on the same conditions," one of which was the payment of fifteen dollars each year. The said lessee " to have the privilege of making a road at the south end of said gristmill to said leased premises."

On March 10, 1843, Samuel Houlton, by his deed of that date, conveyed his interest to one Hiram Esty.

On April 29, 1844, the lease having been cancelled, the lessors, viz., Jay S. Putnam and Aaron R. Putnam, conveyed by deed the same premises, which they had previously leased, to one Rufus Mansur, who subsequently conveyed the same to Hiram Esty, who conveyed the same to the tenant.

The foregoing is substantially the history of the title, as claimed by the respective parties, both claiming under the same grantors. The demandants contend that the demanded premises is embraced in the mortgage deed from Putnam to Hussey, either as being "all the lands and mill privilege (not heretofore sold by us) on the dam connected with said gristmill and privilege," or, as being "the land and privilege where the same is situated, necessary for and attached to said gristmill," and that they were necessary for and attached to said gristmill; both of which propositions are denied by the tenant.

The deed from the Putnams to Hussey being prior to that to Mansur, the former must control, notwithstanding the latter may embrace a portion of the same premises. The lease to Houlton, while in force, would have only created an incumbrance, so long as its conditions were complied with, the rent enuring to Hussey or his grantees. The surrender of the lease alone would not authorize the lessors to convey in fee the leased premises, provided they had previously conveyed them to another person; for, by so doing, the other person would have been deprived of his rent. So that the rights of the parties principally depend upon the construction of the deed from the Putnams to Hussey.

This deed has already, in the case of *Esty* v. *Baker*, 48 Maine, 495, received a partial construction. It appeared in that case that the plaintiff erected, in 1841, on the premises leased to Houlton, a factory building. Among the rights granted in the lease to Houlton, was the right to make a road on the south side of the gristmill to the county road. This road the plaintiff had built. In 1857, the defendant erected a shop near said road or passage-way, and placed a shaft from his shop to his gristmill, on the other side of the passage-way, running the shaft under a bridge or platform, and so as not to obstruct the passage-way to the factory.

The defendant offered to prove that the land, on which the trespass was alleged, was necessary to the gristmill, and

that the lease to Houlton, under which the plaintiff, in part, derived his title, had been surrendered; all of which the Court (Judge APPLETON sitting at *Nisi Prius*,) excluded, and ruled that the conveyance of the gristmill covered only the land on which it stood; that the lease to Houlton was assignable, and was duly assigned to the plaintiff; and that the location of the shaft across the passage-way, leading to the plaintiff's factory, was a trespass, for which the defendant was liable in nominal damages.

This ruling was not sustained by the full Court, and the case was sent back for trial to ascertain, as a matter of *fact*, whether the passage-way was "*necessary for and attached to said gristmill.*" Upon that issue, principally, the case was presented to the jury, as again reported in 50 Maine, 325. But, in order to present that question of fact, it became necessary to give a construction to the deed most favorable to the plaintiff. Otherwise, if the construction contended for by the defendant's attorney had been given, no question would have been left for the findings of the jury. Consequently, for the purposes of the trial, I instructed the jury, that the Hussey deed conveyed only the gristmill owned by the grantor, with the land and privilege where the mill was situated, necessary for and attached thereto, exclusive of anything embraced in that description, which the grantors had previously sold; that, if the land covered by the passage-way, and on which the defendant's shop was erected, were, on May 13, 1843, (the date of the Hussey deed,) necessary for and attached to said gristmill, then it passed to Hussey, and this action cannot be maintained.

Upon these instructions and others of minor consequence, the jury returned their verdict for the defendant, which this Court have sustained, overruling all exceptions, as well as the motion to set it aside as being against evidence. It is true, that the jury found specially that the plaintiff had given the defendant permission to erect the building, but that finding was not considered by the Court, and became

immaterial, since, if he was not the owner, such consent was wholly superfluous.

Let us here then consider, as to what has heretofore been settled by the jury and this Court. It is, that the lease was surrendered and became inoperative ; that the passage-way described therein was necessary for and attached to the grist-mill, and passed by deed to Hussey. This decision is for-ever binding upon the parties of record and their privies in estate. If not of record, certainly the same facts would produce the same result. It isolated the plaintiff's building, situated easterly and on the stream side of the gristmill, and debarred him from any right, except by permission, to pass and repass to and from the public highway, which rendered his property comparatively valueless, except his claim for betterments.

Cotemporaneous with this decision, and, it is to be pre-sumed, influenced by it, the plaintiffs, in the case now un-der consideration, purchased the gristmill with all the rights and privileges coëxtensive with those named in the mort-gage deed from the Putnams to Hussey, which had previous-ly been foreclosed, and thereupon commenced their action for possession of the demanded premises, claiming title to the same by force of their deed. The case was tried upon the same rulings and instructions as in the previous case of *Esty* v. *Baker*, which had passed the ordeal of the full bench, and been pronounced to be correct. Much testimony was elicited and a personal examination of the premises had by the jury, who, by their verdict, found the title to be in the plaintiffs, but allowed the defendant the full value of his erections. Nothwithstanding all this, again are presented the same old exceptions and motion, which, if we are con-sistent, should be disposed of as formerly. If there are any reasons why the present verdict should be set aside, which were not invoked against the former one, I am unable to perceive them. In the former case the passage-way was in controversy, as being inconsistent with the ordinary use of the gristmill, and, under instructions to the jury, which

have been fully sustained by this Court, they found such inconsistency, and their verdict has been sustained and judgment rendered thereon. The right to have and maintain a passage way, from the public highway to the site of the factory building, was as well provided for in the lease to Houlton as the site itself.

Now, on referring to the survey and plan of Parker P. Burleigh, used at the trial in both cases, it will be perceived that the passage-way is located south of the gristmill and not far from eight feet therefrom, and is about twenty-three feet in width on an average. Whereas, the factory building is situated easterly of the gristmill, about two feet therefrom, and directly over the gristmill flume, creating a much greater incumbrance to the gristmill than the approach before mentioned.

The difficulty in these cases has arisen from the fact that the descriptions in the deed to Hussey and the lease to Houlton were inconsistent and conflicting. If the defendant held his title under the lease, I see no reason why he should not have prevailed, the lease having been executed and delivered prior to the deed. But the defendant does not hold under the lease, but under a deed made long subsequent, by the Putnams to Mansur, and after the rights under the Hussey deed had fully vested.

But the Court, at the several *Nisi Prius* trials, has been requested to give a judicial construction to the Hussey deed, and none has been given, except one at the first trial, which the law court held to be too restricted; the rulings at the other trials were merely *pro forma*, for the purpose of admitting parol testimony and other documentary evidence as to certain facts, explanatory of the intention of the parties. The facts are now before us and we can proceed more understandingly. Of the rulings heretofore, the defendant has no reason to complain, for, if otherwise and as contended by the plaintiffs, his whole evidence might have been excluded.

What was the Putnams' title to lands and privileges on

the gristmill dam, on May 13, 1843, prior to their convey-
ance to Bachelor Hussey? They were then the undisputed
owners in fee of the gristmill proper, and of the demanded
premises. It is true, they had previously leased a portion
to Houlton, for a period of twenty years, with his right of
a perpetual renewal, upon condition that he paid the sum of
fifteen dollars annually. But this lease did not divest the
lessors of their fee in the leased premises; at any time,
upon a forfeiture, their possession would revert. The Put-
nams, then, had a legal right to convey the leased premises
in fee and in mortgage to Hussey, who subsequently became,
in legal contemplation, the landlord of the lessee.

Again, on an inspection of Burleigh's plan, it will be no-
ticed, that the dam extends across the Meduxnekeag stream;
on the eastern shore is a sawmill, on the western the grist-
mill. Such were the erections at the date of the Hussey
deed. How natural, then, and appropriate, it would have
been to denominate the eastern part the sawmill, and the
western the gristmill dam.

With these preliminary remarks, the true intent and mean-
ing of the language, used in the grant to Hussey, becomes
apparent. It conveys "the gristmill in Houlton, on the
Meduxnekeag stream, now owned and occupied by us, with
all the appurtenances and machinery thereto belonging."
Had the description ended here, only the mill and the land
upon which it stood might have passed, as was ruled by the
Judge at the first trial, which has before been referred to.
But the description proceeds, — "*together* with the land and
privilege where the same is situated, necessary for and at-
tached to said gristmill." The word "together" implies
something in addition to what had previously been describ-
ed, and embraces the " land and privileges where the mill is
situated." This sentence advances one step further and au-
thorized the jury to find what land and privileges were
necessary for and attached to said gristmill, as subsequently
decided, in the case of *Esty* v. *Baker*, before cited, and
again found, by the jury in the case at bar, under similar

rulings. Next comes an additional, and the final clause, of which the exigency of no former trial, nor even of this, at *Nisi Prius*, has required a judicial construction; for the owners of the gristmill, on the two prior clauses, have been sufficiently protected without it. Had the verdicts of the jury been adverse to them, based on the facts, they have always reserved this final clause to be invoked by them in the last resort, for the maintenance of their legal rights; and it is not invoked now, as I understand from the argument of the plaintiffs' counsel, except for the purpose of terminating an endless clamor to set aside verdicts as being against evidence, and to show that the defendant has no legal title whatever to the demanded premises.

That final clause is this,—" hereby meaning and intending to convey all of the lands and mill privilege (not heretofore sold by us) on the dam connected with said gristmill and privilege."

We have seen that the factory site at this time had not been sold, and that it was situated on the dam — was land and mill privilege. Besides, the term " all the lands, would, *ex vi termini*, embrace all its privileges. If it was intended that it was only such lands and privilege as was connected with said gristmill and privilege, what was the necessity of using the word dam at all; the description would have been perfectly intelligible without it. Such construction would not answer all the calls in the deed. It would virtually be discarding one of the most important words in the grant. If the language had been, all the lands and privilege on the gristmill dam, no one could have mistaken the meaning; and the expression, on the dam connected with said gristmill and privilege, is equivalent to the expression, on the gristmill dam, used to distinguish it from the sawmill dam on the opposite side.

Judge DAVIS, who drew the opinion of the Court, in *Esty* v. *Baker*, has advanced additional reasons, sustained by authorities cited, and has come to the same conclusion. The

facts on two trials, with a most liberal construction for the tenant, having been settled against him, and now the law regarding his title, it would seem that he ought to be satisfied with the very liberal allowance which the jury have awarded him for his improvements.

*Exceptions and motion overruled.*
*Judgment on the verdict.*

WALTON, DICKERSON and DANFORTH, JJ., concurred.
TAPLEY, J., concurred in the result.

APPLETON, C. J., dissenting. — The rights of the parties litigant are to be determined by and are dependent upon the construction of the deed under which the demandants derive their title.

On the 15th March, 1841, Jay S. Putnam and Aaron R. Putnam leased to Samuel Houlton " the following described mill privilege, situate in Houlton, viz., commencing at the south end of *our* gristmill flume, now occupied by us in said Houlton, four feet east of the southwest corner of said flume, running northerly on said flume parallel with said gristmill · forty feet, thence easterly to the east side of said flume, thence northerly to James A. Drew's line, thence easterly on said line fifteen feet, thence southerly, parallel with said gristmill, a sufficient distance to come in right angles with first mentioned bounds, thence westerly to the first mentioned bound, together with our right of the water privilege of said dam for dressing cloth, carding and manufacturing wool in its various branches, with the right to occupy the above described part of said flume for a foundation to erect buildings on, and the privilege of making a road at the south end of said gristmill to said premises, not obstructing the privilege of water to said gristmill, provided, also, that the said Houlton, or those claiming by, through or under him, shall take no water, when, by so doing, there would not be sufficient left for the Putnams' gristmill, or when the same would interfere with the right of

water granted to James A. Drew, in 1829, and to Edward Kelleran, in 1834." This lease was under seal, and for the term of twenty years, with a perpetual right of renewal on the part of the lessee.

On March 10, 1843, Samuel Houlton conveyed his interest, thus acquired, to Hiram Esty, for whose benefit he had originally taken the lease.

After this lease, and while Esty was in the occupation of the premises and of the buildings erected thereon, on the 13th of May, 1843, said J. S. and A. R. Putnam mortgaged to Bachelor Hussey "the gristmill, in said Houlton, on the Meduxnekeag stream, *now owned and occupied by us*, with all the appurtenances and machinery thereto belonging, together with the land and privileges where the same is situated, necessary for and attached to said gristmill; hereby meaning and intending to convey all the lands and mill privilege (not heretofore sold by us) on the dam connected with said gristmill and privilege, with the preference of water in said stream and privilege; being situate on and a part of lot numbered thirty-eight, in said Houlton, the same being subject, or a part of the same mill to a mortgage in favor of Edward Kelleran, on which there is due about the sum of three hundred and fifty dollars."

This mortgage was duly foreclosed and the title to the mortgaged premises is vested in the plaintiffs.

On the 29th April, 1844, the Putnams conveyed to Rufus Mansur the premises leased to Houlton. Mansur conveyed the same to Hiram Esty, on Dec. 29, 1851.

The defendant acquired the title of Hiram Esty to the premises in dispute, by deed dated Aug. 29, 1863.

The tenant, and those under whom his title is derived, have occupied the premises in controversy since the date of the lease from the Putnams to Houlton, 15th March, 1841, without the payment of rent to, or the recognition of title in the plaintiffs, or those claiming title under the mortgage from the Putnams to Hussey, dated 13th May, 1843.

The demandants claim that the land in controversy is in-

cluded in the mortgage from the Putnams to Hussey, of the date of May 13, 1843.

This mortgage conveys " the gristmill in said Houlton, on Meduxnekeag, *now* owned and *occupied* by *us*, together with the land and privileges where the same is situated, *necessary for and attached to* said gristmill;" These words convey the gristmill and the land under and adjoining the same, necessary for its use and then used with it. *Whitney* v. *Olney*, 3 Mason, 280; *Crosby* v. *Bradbury*, 20 Maine, 61.

They do not convey the premises in dispute. They are not included in the expression *now owned and occupied*, for they were subject to a lease with a right of perpetual renewal, and were not occupied by the mortgagers.

The plaintiffs cannot claim these premises as " necessary for and attached to said gristmill," for the gristmill has been occupied for about a quarter of a century without its occupants enjoying them. The lease to Houlton determines the question of necessity. It was given while the Putnams were the undisputed owners of the whole. The mortgage is subsequent to that lease, which was duly recorded.

Neither are these premises attached to said gristmill. The proof shows they never were. If they had been, they were detached by the lease, and with a right on the part of the lessee that they should ever remain thus detached. If the jury have found these premises " necessary for and attached to the gristmill," such finding is most manifestly against all the evidence in the case, for they have been used for purposes disconnected with the gristmill, from a period anterior to the mortgage under which the demandants claim, and have been so used by and under authority derived from those from whom the demandants' title was obtained. *Furbush* v. *Lambard*, 13 Met., 109.

But the mortgage deed further adds; " hereby meaning and intending to convey all the lands and mill privilege (not heretofore sold by us) on the dam *connected* with said gristmill privilege," &c.

The words " meaning and intending," obviously imply

that what follows is explanatory of what precedes. Such is their natural and obvious meaning, though, in some cases, what follows has been held to enlarge, and in others, to restrict the previous grant.

The meaning and intention is not "to convey *all* the lands and mill privilege (not heretofore sold by us) on the dam," but the "lands and mill privileges on the dam connected with said gristmill," excepting what had been sold, and those only. It was not to convey lands adjacent to the gristmill. It is not to convey other lands and privileges. It is to convey only those on the dam *connected* with the gristmill. The object was to assure all the rights of the gristmill as connected with the dam, not to convey all mills and privileges on the dam.

But the land and privileges previously leased, though on the dam, were not then and never had been "connected with the said gristmill and privilege." It was land *other* than land connected therewith. It was a privilege other than the gristmill privilege. If they had ever constituted any part or portion of the gristmill lot and its privilege, of which there is no proof, they had been disconnected therefrom. They had ceased, though on the dam, to be "connected with said gristmill and privilege" by the act of the Putnams, and before the conveyance, under which the demandants claim.

Nor are these views inconsistent with those previously expressed, when the construction of the language in the mortgage deed from the Putnams to Hussey was under the consideration of the Court. In *Esty* v. *Baker*, 48 Maine, 495, the Court intimated clearly the opinion, that the road leased to Houlton and granted to Mansur, was neither necessary for or attached to the plaintiffs' gristmill. *A fortiori*, was this the case as to the residue of the premises thus leased and granted. In *Esty* v. *Baker*, 50 Maine, 325, Mr. Justice DAVIS remarks as follows:—"So far as appears in the evidence reported, the parties themselves, by their subsequent acts and occupation, seem to have adopted the latter

construction, treating the grant as embracing, not all the lands and privilege on the dam, not previously sold, but all the lands and privilege connected with the gristmill." But there is no intimation that the grant embraced other lands and privileges than those connected with the gristmill, still less, that it embraced those which, if ever connected therewith, had, by the previous act of the mortgager, been disconnected, and were then occupied and enjoyed as separate and distinct therefrom.

The verdict is alike against law and evidence, and should be set aside and a new trial granted.

KENT and BARROWS, JJ., concurred.

